**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BENJAMIN DEDJOE,**

                                        **Plaintiff,**

        **-against-**                                        **1:15-CV-1170**

**DR. MARK T. ESPER,**
**in his official capacity as the**
**Secretary of the Army,**[1]

                                        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                        **DECISION & ORDER**

**I.      INTRODUCTION**

        Following a jury verdict in favor of Defendant Department of the Army on Plaintiff

Benjamin Dedjoe's sole remaining claim, Plaintiff moves for judgment as a matter of law or,

in the alternative, a new trial. Dkt. Nos. 104 & 117.  Also, Defendant moves to confirm its Bill

of Costs (Dkt. No. 105), and to redact portions of the trial transcript (Dkt. No. 114).  The

Court addresses these motions _seriatim_.

**II.     BACKGROUND**

        The Court presumes familiarity with the procedural and factual background of this

_____

        [1]As of the date of this Decision and Order, Ryan D. McCarthy, the Defendant named by Plaintiff in
this matter, is no longer the Acting Secretary of the Army, having been succeeded by Dr. Mark T. Esper.  The
Clerk of Court is therefore instructed to substitute "Dr. Mark T. Esper, in his official capacity as the Secretary
of the Army" as the Defendant, in accordance with Federal Rule of Civil Procedure 25(d).

1

case, and recites portions of this background only where necessary to decide the pending motions.

## III.    DISCUSSION

### a.  Plaintiff's Motion for Judgment as a Matter of Law or New Trial

#### 1.  Rule 50 Standard of Review

Plaintiff moves for a judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). In reviewing the motion, "[t]he court must consider the evidence in the light most favorable to the non-movant and 'give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence" bearing in mind that a jury is free to believe or disbelieve any part of a witness' testimony. *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012) (quoting *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007)). The Court may "disregard all evidence favorable to the moving party that the jury is not required to believe," *Zellner,* 494 F.3d at 371 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 135 (2000)), and is required "to give [the non-moving] party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted).

The moving party thus bears a heavy burden, especially where, as here, "the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Cash v. Cty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011)(internal quotation marks omitted). "A judgment notwithstanding the verdict may only be granted if there exists such a complete

absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Wiercinski v. Mangia 57, Inc.,* 787 F.3d 106, 112 (2d Cir. 2015) (internal quotation marks omitted).

### 2. Rule 59 Standard of Review

In the alternative, Plaintiff moves for a new trial pursuant to Fed. R. Civ. P. 59. The Court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Lawson v. Cty. of Suffolk*, 920 F. Supp. 2d 332, 339 (E.D.N.Y. 2013)(citing 12 *Moore's Federal Practice*, § 59.13[1] at 59–43 (3d Ed. 2005)).

"A district court should grant a new trial motion if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (quoting *Smith v. Lighting Bolt Productions, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987)); *see Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012) ("'[A] decision is against the weight of the evidence . . . if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice.'")(quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002)). Such a motion may be granted "even if there is substantial evidence to support the jury's

verdict." *Landau*, 155 F.3d at 104. Though a trial judge "is free to weigh the evidence

himself, and need not view it in the light most favorable to the verdict winner," *DLC Mgmt.*

*Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998), a jury's verdict should

"rarely be disturbed." *Farrior v. Waterford Bd. of Educ.,* 277 F.3d 633, 635 (2d Cir. 2002)

(*per curiam*); *see also Carroll v. Cty. of Monroe,* 712 F.3d 649, 653 (2d Cir. 2013); *Raedle,*

670 F.3d at 417–18. Evaluations of the evidence should be made with a "high degree of

deference ... to the jury's evaluation of witness credibility...," *ING Global v. United Parcel*

*Serv. Oasis Supply Corp.,* 757 F.3d 92, 97–98 (2d Cir. 2014) (internal quotation marks and

citation omitted), and "a trial judge's disagreement with the jury's verdict is not a sufficient

reason to grant a new trial.'" *Lawson*, 920 F. Supp.2d at 344 (internal quotation marks and

citation omitted).

### 3. Analysis - Sufficiency of the Trial Evidence

The only claim before the jury was whether Plaintiff was ordered to leave the U.S.

Army Watervliet Arsenal on November 7, 2012 in retaliation for his prior informal complaints

of race-based discrimination. The jury was instructed that to prevail on this claim, Plaintiff

must prove by a preponderance of the evidence that: (1) he engaged in "protected activity"

under Title VII by making prior informal complaints of race-based discrimination; (2)

Defendant was aware of this protected activity; (3) Plaintiff was then subjected to a material

adverse action, and (4) Plaintiff's protected activity was the determinative factor in the

material adverse action. *See* Trial Trans. ("TT") at 714. The dispute on the instant motion

concerns whether Plaintiff satisfied the fourth element. On this element, the Court

instructed the jury:

4

Plaintiff must prove that the adverse action would not have been taken, or would have been substantially less adverse, were it not for Plaintiff's protected activity. This does not require proof that retaliation was the only cause of the adverse action, but Plaintiff must prove that the adverse action would not have occurred in the absence of a retaliatory motive. Put another way, Plaintiff must prove that but for his prior complaints, he would not have been subjected to the alleged adverse action on November 7, 2012.

*Id.* at 715.

The Court also instructed the jury that "[a]n employer may take adverse decisions against an employee for any reason, good or bad, as long as it is not retaliatory," *id.* at 716, and that whether Arsenal security officers' interactions with Plaintiff were motivated by racial animus was not an issue before the jury. *Id.* at 718. Rather, the Court instructed the jury: "The issues for you to decide are whether Arsenal security officers retaliated against Plaintiff for having made complaints of unlawful employment practices when they instructed him to leave the Arsenal property on November 7, 2012, and whether the Defendant is liable for such conduct." *Id.*

Here, when viewing the trial evidence in the light most favorable to Defendant, it cannot be said that there was such a complete absence of evidence that the jury's verdict could only have been the result of sheer surmise and conjecture. The jury heard testimony that at midday on November 7, 2012, Arsenal Security Officer Brad Frasco was dispatched to the Arsenal Visitor Center to provide assistance to other security officers dealing with a dispute with Plaintiff. *Id.* at 544-45, 636-38. Before entering, Frasco heard loud yelling coming from inside, *id.* at 546, 553, and once inside the Visitor Center saw that Plaintiff was very upset, was "pounding" on the counter, and yelling that the two security officers behind the counter were "messing" with him. *Id.* at 555, 559. Frasco learned that Plaintiff was

upset because he was told he had to provide his full Social Security number on an Arsenal parking form. *Id.* at 557. Frasco told Plaintiff to go about his business filling out the parking form, *id.* at 558, 559, but Plaintiff accused Frasco and members of the security force of being "gangsters" and singling Plaintiff out for harassment. *Id*. at 559. Plaintiff said he was "a hot commodity," that the federal government needed him more than he needed it, and that he could work anywhere. *Id.* Frasco told Plaintiff "that's fine," but if he planned on staying he needed to fill out the paperwork properly and then go about his day. *Id.* Plaintiff responded by asking Frasco if he wanted to assault him. *Id.* Plaintiff then stated that the security officers were harassing him because he is black. *Id.* Frasco believed Plaintiff was trying to incite an altercation and bait the officers into acting unprofessionally. *Id.* at 561. He responded by saying to Plaintiff: "[N]ow it's time for you to go, you're not gonna sit here and call us racists," telling Plaintiff that he would have to leave the Arsenal for the rest of the day. *Id.* at 560. Plaintiff said he was not going anywhere. *Id.* at 561. Frasco yelled at Plaintiff to "get the f - - k outta the Visitor Center," *id.* at 561, at which point Plaintiff walked into the parking lot followed by Frasco. *Id.* at 562.

Frasco called his supervisor, Captain Osgood, to effectuate removing Plaintiff from the Arsenal. *Id.* at 562-63. When Osgood arrived at the Visitor Center, Frasco and Dedjoe were standing in the parking lot. *Id.* at 638. Frasco informed Osgood that Dedjoe became belligerent and aggressive inside the Visitor Center, accused the officers of singling him out because of his race, called the officers racists and gangsters, and was yelling and banging on the counter. *Id.* at 565-66, 641. Frasco advised that he told Dedjoe several times to leave as a result of his actions, but Dedjoe refused to leave. *Id.* at 641. Osgood asked

6

Dedjoe if he was told to leave, which he conceded had occurred. *Id.* at 642. Osgood then told Plaintiff the he needed to follow the officer's instructions and leave, and that he could either get in his car and leave voluntarily, or he would be escorted off post in handcuffs and his car would be towed. *Id.; see id.* at 660. Mark Boomhower, a contractor who was signing into the Arsenal at the Visitor Center during this incident, observed Dedjoe in the parking lot loudly yelling and arguing with security officers about the documents he needed to enter the Arsenal, *id.*, at 598, 602, and also observed that the security officers remained calm, patient and professional. *Id.* at 603.

Frasco testified that it was "absolutely" upsetting that Dedjoe accused him of singling him out because of his race and called him a racist, *id.* at 574, but that was not why he told Dedjoe to leave. *Id.* at 575. Rather, Frasco testified that he told Plaintiff to leave the Arsenal because it was Frasco's job "to protect property, personnel and maintain order," and Dedjoe was "acting very disruptively, very aggressively, he was making the other visitors in the Visitor Center uncomfortable." *Id.* at 573, *see id.* at 591. Frasco testified that another reason he told Dedjoe to leave was "[b]ecause he refused to comply with filling out the proper form to get his registration sticker." *Id.* at 575. Frasco also testified that knowledge of Plaintiff's prior informal race-based complaints did not enter his mind when he made the decision to tell Plaintiff to leave the Arsenal. *Id.* at 590.

Osgood testified that he instructed Dedjoe to leave the Arsenal to back up his officer and ensure compliance with Frasco's directive. *See id.* at 666-67. Osgood also indicted that, although Dedjoe was calm by the time Osgood arrived, he believed that if he excused Dedjoe from compliance with Frasco's order simply because he had calmed down, that

would have stripped Frasco and other officers of their authority. *See id.* at 669.

Under these circumstances, there was more than sufficient evidence to permit a reasonable juror to find that Plaintiff failed to satisfy his ultimate burden - that is, to prove that Frasco and Osgood's "desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). While evidence exists that Frasco became upset, raised his voice, and was aware of Plaintiff's prior protected conduct, the jury was entitled to credit Frasco's testimony that knowledge of Plaintiff's prior protected activity did not enter his mind when he instructed Plaintiff to leave the Arsenal. The jury was also entitled to credit Osgood's non-retaliatory reasons for supporting Frasco's directive.

It also cannot be concluded that the evidence in Plaintiff's favor was so overwhelming that reasonable and fair minded persons could not have arrived at a verdict against him. Plaintiff offers his own interpretations of the conclusions that should have been drawn from the evidence, but the evidence he points to does not overwhelmingly support his ultimate burden of establishing that but for his prior protected activity he would not have been expelled on November 7. "The Court recognizes the depth of [Plaintiff's] belief that he was the victim of [unlawful retaliation] but his sincerity does not affect the lack of evidence." *Bailey v. NYC Dep't of Transportation*, No. 93 CIV. 1121 (LBS), 1998 WL 472010, at *1 (S.D.N.Y. Aug. 3, 1998), *aff'd sub nom. Bailey v. New York City Dep't of Transp.*, 173 F.3d 843 (2d Cir. 1999). Having reviewed Plaintiff's arguments and the totality of the evidence, the Court finds that the trial evidence, viewed in the light most favorable to Defendant, was sufficient to permit a reasonable juror to find for Defendant. Accordingly,

8

Plaintiff's Rule 50 motion addressed to the sufficiency of the evidence is denied.

To the extent Plaintiff offers this challenge to the sufficiency of the trial evidence under Rule 59, the Court is of the opinion the jury did not reach a seriously erroneous result, and that the verdict is not a miscarriage of justice. Accordingly, Defendant's Rule 59 motion on this ground is denied.

### 4. Analysis - Evidentiary Ruling

Plaintiff also contends he is entitled to a new trial because the Court allowed the defense to question him regarding his response to a discovery interrogatory. This interrogatory asked Plaintiff to identify complaints of racial discrimination and/or retaliation he previously filed with any court or administrative agency, to which he answered "none". Defendant sought to impeach Plaintiff's credibility based on what it deemed a false response. *See* TT 3-11, 14. The Court permitted inquiry only so far as necessary to establish that Plaintiff's response to the specified interrogatory was false, but prohibited inquiry into the substance of the underlying claims so as to avoid portraying Plaintiff as a serial Title VII or civil rights litigant. *See id.* at 185-92. However, after initially denying that he was untruthful in answering the interrogatory because he thought it pertained only to court cases, *see id.* at 349:2-5, Plaintiff then said that the response was incorrect because the *instant case* was pending at the time he answered the interrogatory and blamed his attorney for submitting an inaccurate response. *Id.* at 346:8 - 350:25. The Court found that Plaintiff's attempt to avoid directly answering the question posed by Defense Counsel opened the door to further inquiry into whether Plaintiff previously filed specific complaints of racial discrimination and/or retaliation. *Id.* at 351-354. In allowing this line of questioning,

the Court limited the inquiry to whether such complaints were filed, and did not allow inquiry into the substance of the underlying claims. *Id.* at 352, 354, 355.

Contrary to Plaintiff's contention, this case is distinguishable from *Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988), and *Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007). Here, unlike in *Outley*, the defense did not overtly portray Plaintiff as a chronic or perpetual litigant, *see id.,* at 591 ("An important part of the City's overall defense was to undermine Outley's credibility by, *inter alia*, portraying him as a chronic litigant."); 592 (referring to plaintiff as a "perpetual litigant" in the defense opening statement). Also unlike in *Outley*, the Court limited inquiry to evidence probative of whether Plaintiff was truthful when responding to the interrogatory, and did not allow inquiry into the substance of the underlying claims. *See e.g. id.* at 293 ("The total impact of the evidence was to show that Outley is 'claim-minded,' and that the claims before the court were just two more in a long line of lawsuits. Excepting this type of evidence from the general rule of 404(b) would permit an exception to swallow the rule."). Although Plaintiff opened the door to further inquiry by essentially denying that he was untruthful in his interrogatory response, the Court allowed this further inquiry only to the extent it showed that Plaintiff had previously filed complaints of racial discrimination and/or retaliation and thus probative of his credibility. In the Court's opinion, this limited line of questioning did not result in unfair prejudice to Plaintiff, and did not amount to a substantial evidentiary error warranting a new trial. *See e.g. Outley*, 837 F.2d at 593 ("[T]he defense was properly permitted to impeach [plaintiff] with inconsistent statements on his August 1982 application to proceed *in forma pauperis* in connection with the lawsuit as to the 1981 incident."). Moreover, because this further

10

inquiry did not directly delve into the merits of the underlying claims,[2] it did not deprive

Plaintiff of a fair determination of the claim before the jury, as occurred in *Outley*. *See e.g.*

*id.,* at 595 ("We feel that in this context it was likely that the jury regarded Outley first and

foremost as a bringer of nuisance lawsuits, and that as a result his claims did not receive a

fair hearing.").

In *Arlio,* the Second Circuit found that the district court abused its discretion by

allowing irrelevant evidence of a prior arbitration decision, resulting in substantial prejudice

to the defendant. *See Arlio*, 474 F.3d at 53.  Here, by contrast, the Court did not allow

evidence of prior adjudications, and, as indicated above, limited evidence to whether prior

complaints were filed in order to assess Plaintiff's veracity in answering the identified

interrogatory.   Viewing this line of questioning in the context of the totality of the trial

evidence, Plaintiff has not established that the jury's judgment was swayed in a material

fashion by these questions, or that he suffered an impairment of a substantial right justifying

a new trial. *See id.* at 51 ("[A] new trial should be granted only if a substantial right of a party

is affected - as when a jury's judgment would be swayed in a material fashion by [a district

court's evidentiary error].").   Accordingly, Plaintiff's motion for a new trial on this ground is

denied.

## 5.  Analysis  - Principles of Fairness and Substantial Justice

Plaintiff also contends that he is entitled to a new trial before the Court rather than a

jury due to what he asserts is inherent racial bias in the jury pool for the Northern District of

---

[2]In answering Defense Counsel's questions whether he previously filed specific claims of racial discrimination or retaliation, Plaintiff voluntarily divulged specifics of one of the previously-filed claims.  *See* TT 355.

New York.  The argument is without merit.

This case was heard by a jury consisting of eight white individuals.[3]  Plaintiff did not challenge the composition of the jury pool or the empaneled jury, but rather consented to the empaneled jury without objection. *See* TT at 63 (indicating through counsel that the jury was satisfactory to Plaintiff).  By failing to challenge the racial composition of the jury pool or the empaneled jury before the completion of jury selection, Plaintiff waived his challenge to the jury verdict on this ground. *See Bailey v. New York City Dep't of Transp.*, 173 F.3d 843 (2d Cir. 1999)("Bailey's challenge to the jury verdict on the ground that the all-white jury was biased against him is deemed waived because he did not challenge the racial make-up of the jury prior to the completion of jury selection.")(citing *McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir.1996)); *see also Joiner v. Chartwells*, 486 Fed. Appx 196, 198 (2d Cir. 2015).[4]

Moreover, Plaintiff fails to provide sufficient evidence indicating that the jury venire impermissibly excluded African-Americans,[5] or did not represent a fair cross section of the

---

[3]Plaintiff asserts that his case was "before a six person jury that was exclusively Caucasian and exclusively male." Ptf. Mem. L. (Dkt. No. 117-9) at 24. Defendant asserts that the jury consisted of "two white females and six white males." Def. Mem. L. (Dkt. No. 126) at 14.  The record is clear that the jury consisted of 8 persons, *see* 05/07/18 Minute Entry ("Jury trial commences on 5/7/2018 . . . . Jury selection held. Jury sworn w/8 jurors empaneled."), and the Court accepts the parties' representations that all trial jurors were white.

[4]("Joiner, who was represented by counsel at trial, failed to raise any challenge to the racial composition of the jury.  As a consequence, the record contains little or no evidence regarding the racial composition of the jury pool or the reasons for defense counsel's challenge to the juror Joiner now alleges was the only African-American in the jury pool.  Because Joiner failed to raise the issue below, and because the record is therefore inadequate to address it here, we will not now consider the issue.")(citing *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)).

[5]Based on prior cases examining the Northern District of New York's jury selection process, it is doubtful that Plaintiff could demonstrate systematic exclusion of African-American's from the jury selection process. *See e.g. United States v. Bullock*, 550 F.3d 247, 251–52 (2d Cir. 2008)("Judge McAvoy explained at trial that in constructing the jury pool, the court drew potential jurors from the rolls of voters and drivers. The
(continued...)

community. Without this evidence, the motion for a new trial on the ground that the trial was unfair because of the racial composition of the jury pool or trial jury must be denied. *See Espaillat v. Cont'l Express, Inc.*, 33 F. App'x 567, 569 (2d Cir. 2002)("Espaillat's arguments that the jury selection excluded Hispanic jurors are neither supported by the evidence nor sufficiently particularized or proven to require a new trial."); *Williams v. City of Newburgh*, 830 F. Supp. 770, 773–74 (S.D.N.Y. 1993).[6]

Finally, the Court is not convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice. Accordingly, Plaintiff's motion for a new trial based upon considerations of fairness and substantial justice is denied.

### b. Defendant's Bill of Costs

Defendant filed a Bill of Costs (Dkt. No. 105) in the total amount $3,902.86, consisting of $1,912.55 for transcript fees, $1,910.31 for witness fees, $20 for docket fees, and $60.00 for other costs. Plaintiff challenges (1) those costs associated with witnesses David Roe, Paul Edwards, and Lauren Smith; (2) mileage fees claimed for Smith to travel from her half-year residence in Alburgh, Vermont; and (3) all costs associated with Brad

---

[5](...continued)
motor vehicle roll was included specifically 'to make sure that [the] jury pool [wa]s balanced.' That the district court failed in its attempt to achieve such balance does not detract from the court's demonstrably race-neutral approach to juror selection.").

[6]In *Williams*, the Southern District wrote:

In addition, nothing in the record indicates that the jury which heard the case did not reflect "a fair cross section of the community." *Holland v. Illinois*, 493 U.S. 474, 479, 110 S. Ct. 803, 807, 107 L. Ed.2d 905 (1990) (citing *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S. Ct. 692, 696, 42 L. Ed.2d 690 (1975)). Although Williams is now proceeding *pro se*, he is obligated to point to something—i.e. the manner in which the jury panel was assembled or the peremptory challenges were exercised—suggesting racial bias in the jury selection process. The mere fact that Williams is black and only one black juror was selected does not, without more, support a finding of such bias or warrant a new trial.

830 F. Supp. at 773–74.

Frasco. Plaintiff also contends that Defendant should not be allowed any costs because the issues in the case were "close and difficult."  After Plaintiff submitted his opposition, Defendant conceded that $67.45 in costs for Frasco's  pre-trial interview are not taxable, but also seeks an additional $690.30 for the trial transcript fees necessitated by Plaintiff's Rule 50 and Rule 59 motions.

### 1.  Standard of Review  - Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) allows the Court to award the prevailing party its costs.  Fed. R. Civ. R. 54(d)(1); *Kohus v. Toys R Us, Inc.*, 282 F.3d 1355, 1357 (Fed. Cir. 2002).  Defendant is the prevailing party in this action and, therefore, entitled to costs under Rule 54.

The term "costs" as used in Rule 54 includes the specific items enumerated in 28 U.S.C. § 1920.  *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001) (citations omitted).  As a threshold matter, the prevailing party must establish to the court's satisfaction that the taxation of costs is justified. *John and Kathryn G. v. Board of Ed. of Mt. Vernon Public Schools*, 891 F. Supp. 122, 123 (S.D.N.Y.1995); *see* 28 U.S.C. § 1924.  "After the prevailing party demonstrates the amount of its costs and that they fall within an allowable category of taxable costs, that party enjoys a presumption that its costs will be awarded." *Natural Organics, Inc. v. Nutraceutical Corp.*, 2009 WL 2424188, at *2 (S.D.N.Y. Aug. 6, 2009) (quotation marks and citations omitted).   "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception.  For this reason, the losing party has the burden to show that costs should not be imposed."  *Whitfield*, 241 F.3d at 270 (citations omitted).

A district court has authority to review, adjust, or deny an award of costs, and that decision "is committed to the sound discretion of the district court." *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 102 (2d Cir.1999) (quotation marks and citation omitted). A court's decision to deny costs depends on a number of equitable factors, including "misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Whitfield*, 241 F.3d at 269.

### 2. Analysis - Witnesses David Roe, Paul Edwards, and Lauren Smith

Plaintiff challenges the costs associated with witnesses Roe, Edwards, and Smith, arguing: (a) these witnesses, as employees or former employees of Defendant, are not entitled to witness fees because they each testified as party representatives; (b) Defendant did not include supporting documentation for the witness fees associated with these witnesses, and (c) Smith is not entitled to travel expenses .

### A. Party Representatives

The only named defendant and the only real party in interest in this case was the United States Department of the Army. While Roe, Edwards, and Smith testified to specific involvement with Plaintiff and/or with members of the Arsenal security staff, none testified in a representational capacity on behalf of the Department of the Army. Plaintiff's objection on this ground is overruled.

### B. Supporting Documentation

As to supporting documentation, Plaintiff subpoenaed each of these witnesses. *See* Dkt. No. 116-1 at ¶ 2 & Ex. A; Dkt. No. 129-1. Statutory witness fees are set forth in 28 U.S.C. § 1821 and include a $40 per day attendance fee, *id.* at § 1821(b), a mileage

allowance if the witness uses a private automobile, *id.* at § 1821(c)(2), and parking fees, *id.* at § 1821(c)(3).  Roe, Edwards, and Smith's statutory witness fees were Plaintiff's responsibility, and because Plaintiff failed to provide the fees with the subpoenas, he may be taxed these statutory expenses through a Bill of Costs without the need for documentation of the expense.[7]

### C.  Smith's Witness Costs

Regarding Smith's witness costs, the record is clear that Defense Counsel explained to Plaintiff's Counsel that upon retirement from the Arsenal in 2014, Smith began living in Alburgh, Vermont from May through October each year, and in Clifton Park, New York from November through April.  Dkt. No. 116-1, ¶¶ 3-7; Dkt. No. 122, ¶¶ 1-2;  Dkt. No. 129-1. Because both parties wanted to call Smith to testify at the trial in May 2018, counsel agreed to split Smith's statutory witness fees, including the milage expense for the trip to and from Alburgh, Vermont.  Dkt. No. 116-1, ¶ 8 & Ex. F; Dkt. No. 129-1, at 17.

Plaintiff's counsel indicated that she expected to call Smith on May 8, 2018,  Dkt. No. 116-1, ¶ 8 & Ex. F; Dkt. No. 129-1, at 17, so Smith appeared and remained at the Courthouse the entire day but was not called to testify.  Dkt. No. 116-1, ¶ 9; Dkt. No. 122, ¶ 6.  Smith spent the night at her Clifton Park, New York residence, returned the next day, testified, and then returned to her Alburgh, Vermont residence. Dkt. No. 116-1, ¶ 9-10;  Dkt. No. 122, ¶¶ 6-9.  Even assuming that Smith was served with a subpoena *ad testificandum* in March requiring her testimony in May, the subpoena did not require her to alter her plans to move into her Alburgh, Vermont residence in the beginning of May.  Because Plaintiff

---

[7]Defendant argues in the alternative that its response to Plaintiff's challenge to the Bill of Costs should be treated a motion to compel Plaintiff to pay his statutory witness fees.

was aware of Smith's half-year residence in Vermont and agreed to pay one-half of Smith's witness costs, one-half of those costs is a statutory obligation Plaintiff assumed. The other half is an expense born by Defendant that is taxable pursuant to §1920(3). Plaintiff fails to satisfy his burden of demonstrating that the sought-after costs for Smith's testimony are improper or should be denied. Consequently, his objection to Smith's witness costs is overruled.

### 3. Analysis - Frasco's Witness Costs

Plaintiff argues that expenses for Frasco's testimony should be excluded because Defendant failed to produce Frasco for a deposition or disclose his whereabouts in a timely fashion. The issue of Defendant's knowledge of Frasco's whereabouts, and whether Frasco should be allowed to testify, was the subject of an *in limine* motion brought by Plaintiff. The Court resolved the issue in Defendant's favor, *see e.g.*, Dkt. No. 94; TT at 28-29, and Frasco was allowed to testify. Objection to the Bill of Costs is not the proper vehicle to re-litigate this issue. Because Frasco did testify, and because Plaintiff offers no other valid reason to prohibit taxing Frasco's witness costs, the objection on this ground is overruled.

### 4. Analysis - Close and Difficult Case

The retaliation claim that was tried to the jury was not, in the Court's opinion, such a close or difficult case that expenses should not be taxed under Rule 54(d)(1). While Plaintiff evidently believes that the factual issues were close and the jury reached the wrong conclusion, that position is based on a view of the evidence though Plaintiff's eyes. But a party's resolute stance in his position, even after a contrary jury conclusion, does not

make the case so close that costs should not be taxed. Otherwise, every case brought in good faith would avoid taxation of costs, making Rule 54 meaningless. Similarly, the claim tried to the jury was not legally difficult, and it certainly was not so legally difficult or so close that costs should not be taxed. Plaintiff's objection to the taxing of costs on this ground is overruled.

### 5. Analysis - Trial Transcripts

The cost for trial transcripts purchased by Defendant to defend against Plaintiff's Rule 50 and Rule 59 motions is a taxable expense. 28 U.S.C. §1920(2). Because the need for these transcripts arose after Defendant submitted its Bill of Costs, this cost can be added. Thus, $690.30 for the trial transcript fees is added to the Bill of Costs.

### 6. Conclusion - Bill of Costs

For the reasons set forth above, the Court approves a Bill of Costs in the total amount of $4,525.71. This amount is reached by taking the $3,902.86 total in the original Bill of Costs (Dkt. No. 105), subtracting $67.45 for Frasco's pre-trial interview, and adding $690.30 for the trial transcript fees.

### c. Defendant's Motion to Redact Trial Transcript

Defendant moves to redact portions of the trial transcript, essentially requesting these portions be sealed. All of the transcript lines Defendant wants redacted center around Lauren Smith's testimony that, as the former Arsenal Chief of Staff, she imposed a 5-day suspension upon Security Officer Michael Valle. Defendant asserts that information concerning Valle's suspension is covered by the Privacy Act, 5 U.S.C. § 552a, was disclosed to Plaintiff only under a stipulated protective order signed by Magistrate Judge

Hummel, and should be not be made publically available.  Plaintiff does not oppose the motion. Dkt. No. 125.

Defendant's motion implicates First Amendment and common law presumptions in favor of public access to court proceedings and transcripts.[8] *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013); *In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

> [T]he right of access afforded by the common law and First Amendment is not absolute, and the need for disclosure may be overcome where there are "countervailing factors" (in the common law framework), *see United States v. Amodeo*, 71 F.23d at 1050, or where sealing is necessary to preserve "higher values" (in the First Amendment context), *see* [*United States v. Erie Cty, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014)].  Under certain circumstances the privacy interests of the person resisting disclosure can be sufficient to overcome the public right of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 120.

*USA v. Reynolds*, 3:18-CR-0321 (N.D.N.Y. ), 01/09/19 Dec. & Ord. (Dkt. No. 54) at 3-4 (Stewart, MJ)(addressing requested redaction of portions of a detention hearing transcript).

The party moving to redact a transcript of a public court proceeding  "ultimately bears the burden of establishing that sealing is warranted." *Id.* at 4 (citation omitted).  In this regard, the moving party must demonstrate "that higher values overcome the presumption of public access." *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 441–42 (S.D.N.Y. 2018)(citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)).

---

[8] Given the importance of these presumptions inuring to the benefit of entities not before the court, the Court *sua sponte* considers their application. *See e.g. Prescient Acquisition Group, Inc. v. MJ Publ'g Trust*, 487 F. Supp.2d 374, 375 (S.D.N.Y. 2007) (court *sua sponte* required party seeking to maintain court filings under seal to "identif[y] with particularity (*i.e.* page and line) the precise information ... which the party maintains should be kept under seal [and] demonstrat[e] the particular need for sealing the information").

While the Court recognizes the importance of protective orders for discovery purposes, Defendant's interest in maintaining the privacy of Valle's disciplinary history did not override Plaintiff's right to present relevant evidence to the jury. Thus, the Court ruled that Plaintiff's counsel could question Smith regarding Valle's 5-day suspension. This ruling is the functional equivalent of a Court Order allowing disclosure of material covered by the Privacy Act. *See* 5 U.S.C. § 552a(b)(11). Moreover, Smith testified in open court regarding her decision to uphold a 5-day suspension for Valle. The facts surrounding Valle's 5-day suspension "became public the moment [they were] uttered." *Miller v. City of Ithaca*, No. 3:10-CV-597, 2013 WL 12310675, at *1 (N.D.N.Y. Feb. 15, 2013). Once uttered, the subject of Smith's testimony became part of the public domain, *see Craig v. Harney*, 331 U.S. 367, 374 (1947)("What transpires in the court room is public property."), and as such, "cannot be redacted after-the-fact." *Miller*, 2013 WL 12310675, at *1 (citing *United States v. Strevell*, No. 05-CR-477(GLS), 2009 WL 577910, 2009 U.S. Dist. LEXIS 19020 (N.D.N.Y. Mar. 3, 2009) (in turn citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[O]nce the genie is out of the bottle because an otherwise protected document is in the public domain, the court has no power to remove it from that domain."))). Since the "genie is out of the bottle," this Court has "no power to remove it from that domain" by way of redaction. *Strevell*, 2009 WL 577910, at *5, 2009 U.S. Dist. LEXIS 19020,*14–15. Defendant's motion is denied as to any statements about Valle's suspension made in open court.

Defendant also seeks to redact related discussions that occurred during the pre-trial conference and at side bars. These discussions, although not in open court, provide

context to the Court's decision to allow Smith's testimony and thereby fall within the scope of the First Amendment and common law presumptions in favor of public access. *See United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)("The presumption of access is based on the need for federal courts, although independent–indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice."). Defendant has not demonstrated that the need to redact chambers and side bar discussions about evidence disclosed in open court overcomes the First Amendment and common law presumptions in favor of public access to the transcripts. Accordingly, Defendant's motion to redact these portions of the trial transcript is also denied.

## IV.    CONCLUSION

For the reasons discussed above,

- Plaintiff's motion for judgment as a matter of law or, in the alternative, a new trial, Dkt. Nos. 104 & 117, is **DENIED**.

- Defendant's motion to confirm its Bill of Costs, Dkt. No. 105, is **GRANTED as amended**, with the Court approving Defendant's Bill of Costs in the total amount of $4,525.71.

- Defendant's motion to redact portions of the trial transcript, Dkt. No. 114, is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 19, 2019

Thomas J. McAvoy
Senior, U.S. District Judge

21